JOHN W. OLIVER, *et ux. et al.*, *v.* STATE OF TENNESSEE, *ex rel.**

(*Knoxville*, September Term, 1931.)

Opinion filed July 5, 1932.

*As to conclusiveness of decisions on subsequent appeal, see 2 R. C. L., 224; R. C. L. Perm. Supp., p. 393; R. C. L. Pocket Part, title Appeal, section 187.

KRAMER & KRAMER, for plaintiff in error.

M. H. GAMBLE, J. W. COOPER, Assistant Attorney-General, J. PIKE POWERS, JR., and C. C. JACKSON, Guardian *ad Litem,* for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

This is a condemnation suit by which the State seeks to acquire certain lands for park purposes belonging to the Olivers. The Olivers defended upon the ground that the act under which the State was proceeding was unconstitutional, and that the State was without auhority to acquire said lands by condemnation. The trial court sustained this latter defense, and dismissed the petition of the State. Upon appeal this Court reversed the trial court, holding that the State had authority to condemn the land, and remanded the case for such further proceedings in the Circuit Court of Blount County "as are not inconsistent with the holding of this Court." The case is reported in 162 Tennessee at page 100.

Upon the remand a jury of view was appointed, who set apart the land to the State and assessed its value at $10,650. The Olivers excepted to the report of the jury of view and appealed to the circuit court, where the report was confirmed except as to the value of the land. The Olivers moved for a new trial upon the ground that the State had no right or authority to condemn their land. The motion was overruled and an appeal prayed and granted to this court, where a motion was filed to dismiss the appeal because premature, it appearing that the value of the land had not been adjudicated. While this motion is good, it becomes immaterial since, by leave of this court, plaintiffs in error filed a petition for *certiorari,* and their right to have the matters relied upon reviewed in this manner is not questioned.

It is conceded that the petition for *certiorari* raises the same questions of law which were decided adversely to petitioners upon their former appeal. Counsel for

the State ask that the petition be dismissed because without merit, and because this court is without power to change or modify its decision as to the law of the case rendered at a former term.

A case exactly in point is that of *Supervisors of Wayne County* v. *Kennicott*, 94 U. S., 498, 24 L. Ed., 260, in which Chief Justice WAITE, speaking for the court said:

"When the case was here on a former appeal, we decided that the mortgage in controversy was valid in favor of *bona fide* holders of the bonds it was given to secure, and that the complainants were entitled to a decree for the amount of the bonds held by them. *Kennicott* v. *Supervisors*, 16 Wall., 468, 471 (83 U. S., XXI, 321, 322). These questions are, therefore, no longer open; for it is settled in this court, that whatever has been decided here upon one appeal cannot be re-examined in a subsequent appeal of the same suit. Such subsequent appeal brings up for consideration only, the proceedings of the Circuit Court, after the mandate of this court. (Citing authorities.)

"It is true that, after reversing the decree of the circuit court upon the former appeal, it was further ordered that the cause be remanded 'with directions to award a new trial;' but the mandate as sent down 'commanded that such execution and further proceedings be had in conformity to the opinion and decree of this court, as according to right, etc., ought to be had.' Technically, there can be no 'new trial' in a suit in equity; and as our mandates are to be interpreted according to the subject-matter of the proceeding here, and, if possible, so as not to cause injustice (*Story* v. *Livingston*, 13 Pet., 359), it is proper to inquire what must have been intended by the use of that term in the decree, since it

cannot have its ordinary meaning. For that purpose, we held, in *West* v. *Brashear,* 14 Pet., 51, that resort might be had to the opinion delivered at the time of the decree. Availing ourselves of this rule, it is easy to see that there could have been no intention to open the case for further hearing upon the issues presented and decided here. There is not an expression of any kind in the opinion indicating any such determination. On the contrary, it is distinctly declared that the mortgage was valid, and that the complainants were entitled to their judgment. Under these circumstances, it is apparent that the words 'new trial' were used to convey the idea of such further action as should be found necessary to carry into effect what had been already decided. No error has been assigned upon the proceedings in the Circuit Court under the mandate construed in this way, and *the decree of the Circuit Court is, therefore, affirmed."*

In *Jameson* v. *McCoy,* 52 Tenn., 108, 115-116, Chief Justice Nicholson, delivering the opinion of the court, said:

"The first question raised in the argument is, whether the judgment of this Court, at its April Term, 1868, overruling the defendant's demurrer, and remanding the cause for plea or answer, is conclusive upon this Court as to the matters adjudged by that decree? The answer to this question depends upon the settlement of another question—whether the decree at the April Term, 1868, was an interlocutory or a final decree? In general, an appeal can be taken to this Court only from final judgments or decrees. But by special statute, several exceptions to this rule are provided for, and among them is

the discretion given to Chancellors to allow appeals from decrees overruling demurrers. The object of this exception to the general rule is obvious. It is intended to save parties the trouble and expense of going through a long course of litigation, before having it finally determined whether, upon the face of the bill, the Court has the jurisdiction to grant the relief prayed for. The sole object, therefore, of such an appeal, is to obtain the final adjudication of the questions raised by the demurrer. If the decree rendered in such case be not final, then nothing is accomplished by the appeal. We hold, therefore, that the decree rendered by this Court at its April Term, 1868, was final and conclusive as to the matters passed upon, and that it is as binding on this Court as it was on the Chancery Court. All the legitimate consequences of the doctrine of *res adjudicata* belong to that decree.''

In *State* v. *Bank of Commerce,* 96 Tenn., 591, 596-597, it is said:

''It is settled and familiar law, that no Court can, upon a second writ of error or appeal, although in the same case and between the same parties, change or modify its rulings of a former term. *Supervisors* v. *Kennicott,* 94 U. S., 499; *Clark* v. *Keith,* 106 U. S., 464.

''It is also settled law that no Court can, in such case, change or modify its judgment of a former term, except for clerical errors. *Elliott* v. *Cochran,* 1 Cold., 389; *Sibbald* v. *United States,* 12 Peters, 488.''

Upon principle we see no reason why the rule should not apply in a law case as well as in an equity case, where the court adjudicates the rights of the parties and remands the case for further proceedings in conformity with those rights. The defenses interposed on the orig-

inal hearing could have been raised by demurrer as well as by answer, and since they were purely legal, their determination became *res adjudicata* in the same sense that the action on a demurrer becomes final and cannot be again adjudicated upon a second appeal.

Counsel for plaintiffs in error rely upon *Bynum* v. *Apperson,* 56 Tenn., 632, 644, in which it was said:

"On a former trial of this case on appeal, reported in 5 Col., 341, the opinion, reversing the case, holds the law different from that we have laid down, but we can not and will not assent to the view there expressed.

"The doctrine of a former adjudication can have no application to this case, as it was a simple reversal of the judgment of the court below, for reasons therein stated; but no judgment was given for the one party or the other, except that of reversal, and what the law fixed as a consequence, the costs of this Court. The judgment of reversal is conclusive that the case was reversed, but of nothing more. Under this judgment the case was sent back for a new trial, but on that trial a. new case might have been made, new evidence. introduced, and entirely different questions presented. We are no more bound by that opinion of the Court, as to the law laid down, than in any other case, between other and different parties. The rule in a Chancery case would be different, where the decree made could settle the rights of the parties upon the facts of the record."

This case is easily distinguishable from the case under consideration. In that case the holder of a note sued the indorser at law. The note was payable at a certain bank in Memphis, but no demand for its payment at maturity was made at the bank. The jury found for defendant. Upon appeal this court held that the holder was excused

from presenting the note for payment because the bank was closed, and remanded the case for a new trial. Upon the second trial in the circuit court there was a judgment for the holder of the note, and the indorser appealed. On this latter appeal this court found as a fact that the bank was not closed when the note matured and that the holder was not excusable for failing to present it for payment. Necessarily a finding of fact and an application of the law thereto upon the first appeal was not binding upon the court upon a second appeal, because, as stated in the opinion, upon a second trial a new case might be made out, new evidence introduced, and entirely different questions presented. In that case there was a reversal and a general remandment. In the instant case no questions of fact were involved, and the case was remanded for the sole purpose of having the land condemned and valued. The question as to the power of the State to condemn had been concluded and the judgment was final as to that matter, and the case was to be proceeded with in conformity with the opinion holding that the State had a right to take the land. This court is, therefore, bound by its former judgment.

Entertaining these views, we feel constrained to dismiss the petition at the cost of the petitioners.