IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 14, 2026 Session

## ANDREW J. WITHERS v. WITHERS COLLECTION, INC., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-004125        Rhynette N. Hurd, Judge**

_____

**No. W2024-01929-COA-R3-CV**

_____

This appeal arises from a complaint originally filed in the Shelby County chancery court that sought the removal of the trustee of a trust based on alleged breaches of fiduciary duties, breach of trust, conversion of trust property, and other claims. The chancellor who was assigned the case determined that he had a conflict of interest requiring him to recuse himself. The other chancellors in the judicial district were also unable to hear the case, and the original chancellor signed an order transferring the case to the circuit court. The circuit court entered an order removing the trustee. The defendants filed this appeal. Finding that the circuit court lacked subject matter jurisdiction, we vacate the removal of the trustee and remand for transfer of the case back to a court of appropriate jurisdiction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which VALERIE L. SMITH, J., and ROY B. MORGAN, JR., SP. J., joined.

Terry Clayton, Nashville, Tennessee, and Sheridan Todd Yearly, Baltimore, Maryland, for the appellants, Withers Collection, Inc., and Rosalind Withers, individually and in her capacities as the trustee of the Withers Family Trust, the Withers Family Representative, and the Executive Director of Withers Collection Inc.

Edward M. Bearman, Memphis, Tennessee, for the appellee, Andrew J. Withers.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This case arises from the administration of a trust created by Ernest C. Withers, a photographer famous for his work capturing American historical events such as the Civil Rights Movement. Mr. Withers executed a will and trust document on July 9, 2007, in which he established the Withers Family Trust for the benefit of his wife and, upon her death, his living children and/or his deceased children's living issue. The corpus of the trust appears to be comprised of certain real property, and various pieces of personal property including, most notably, Mr. Withers's photography library.[1]

Mr. Withers died in October 2007, and his wife died in August 2008. Upon the death of Mrs. Withers, Rosalind Withers, the couple's daughter and one of the trust beneficiaries, assumed the role of trustee. From the outset, it appears that Rosalind and two of her brothers, Andrew Withers and Billy Withers, had disagreements regarding the administration of the trust.[2,3] Between 2008 and 2012, Andrew and Billy filed a declaratory judgment action in the Shelby County chancery court, in which they sought dissolution of the trust and distribution of its assets to the various beneficiaries. However, the parties entered a settlement agreement that provided the trust would remain in existence for as long as permitted by its terms, unless the beneficiaries unanimously agreed to its dissolution. The agreement also provided that Rosalind would remain the trustee and stated Andrew and Billy "shall not bring any future action whereby they challenge the authority of Rosalind Withers to act as Trustee of the Trust and/or to seek to terminate the Trust or otherwise challenge the validity of the Trust." The agreement also prohibited the parties from offering to sell or license the trust's assets without permission of the trustee. An order adopting this settlement agreement was entered on February 23, 2012.

Despite this, Andrew again attempted to seek control of the trust through a petition filed in February 2016. Andrew sued Rosalind in her capacity as trustee and alleged that she had engaged or failed to engage in various acts and thereby violated her duties as trustee. The petition was dismissed for a litany of reasons, including res judicata and failure to plead with particularity. Andrew appealed that decision to this court. However, we dismissed the appeal for inadequate briefing. *See Withers v. Withers*, No. W2016-01663-COA-R3-CV, 2018 WL 625119, at *2 (Tenn. Ct. App. Jan. 30, 2018).

Nevertheless, Andrew filed a new complaint seeking the removal of Rosalind as the trustee on April 6, 2018.[4] The case was assigned to Chancellor Jim Kyle. Various hearings

---

[1] A copy of the trust document has not been included in the record presented on appeal. The parties do not disagree regarding the trust's ownership of these assets.

[2] As Rosalind, Andrew, and other persons referenced throughout this opinion share the last name Withers, we refer to them by their first names for sake of clarity. We intend no disrespect.

[3] The trust has several additional beneficiaries who are not parties to this litigation.

[4] This complaint was not contained in the record presented on appeal. After the case was transferred to circuit court, an order described the initial action as a "Complaint for Declaratory Judgment, Injunctive Relief, and Damages." The parties appear to agree, and Andrew stated in a later filed motion to alter or amend discussed below, that this complaint sought "a substitute Trustee be appointed" in accordance with

were held, and the chancery court entered an order denying Andrew's request for relief on June 18, 2018.[5] Additionally, the order required Andrew to show cause as to why an order of contempt should not have been entered "based upon the frequent acts of . . . offering to sell, or offering to license assets of the Trust without permission of the Trustee since the final order of 2012, in violation of that order's mandate[.]" Subsequently, Andrew filed a motion to alter or amend the judgment or to be granted permission to appeal. Shortly thereafter, the chancery court entered an order of recusal signed by each of the three chancellors for the judicial district.[6] The order stated that:

> IT DULY APPEARING to the Court that sufficient conflict exists between the three Chancellors, the Parties involved and/or the attorneys for the Parties wherein it is appropriate that the Chancellors recuse themselves in this case. The Chancellors agree that this case should be transferred to another Court with appropriate jurisdiction.

Shortly thereafter, another order was entered stating:

> IT DULY APPEARING to the Court that sufficient conflict existed between the three Chancellors, the Parties involved, and/or the attorneys for the Parties wherein it was appropriate for the Chancellors to recuse themselves in this case. Following appropriate procedures established in the 30th Judicial District for Shelby County, Tennessee[,] this case is hereby transferred to Division 5 of the Circuit Court of Shelby County.

The case was assigned to Judge Rhynette Hurd. On December 13, 2018, the circuit court entered an order permitting Andrew "to proceed with his original Complaint for Declaratory Judgment, Injunctive Relief, and Damages, as filed on April 6, 2018, in the Chancery Court." The court also stated that his motion to alter or amend or otherwise be permitted to appeal was "moot." Andrew filed an amended complaint for declaratory judgment, injunctive relief, and damages on August 12, 2019. In the amended complaint, Andrew asserted that he had not received any distributions from the trust since 2008, except for one $200 payment in 2015. He claimed that Rosalind, the Withers Collection, Inc.,[7] and various other persons associated with the trust failed to provide him with annual reports

---

the "remedies provided by applicable Tennessee law for breach of trust and breach of fiduciary duty[.]"

[5] The order states that Andrew's "Motion for Accounting, Restraining Order, Temporary and Permanency Injunction is denied." Again, as the complaint and other documents from this portion of the litigation are not contained in the record, it is unclear whether this constituted a complete dismissal of Andrew's complaint or the dismissal of a subsequently filed motion.

[6] The record is unclear as to what conflicts existed or why Chancellor Kyle did not detect a conflict until after he entered the above-referenced order.

[7] The Withers Collection, Inc., is a museum and gallery that works in partnership with the trust to display the photography library owned by the trust.

and conspired to conceal details of the trust from him.[8]  He raised the following causes of action: (1) aiding and abetting breach of fiduciary duty, (2) civil conspiracy, (3) breach of trust, (4) breach of duty to inform and report, (5) breach of duty of loyalty, (6) conversion, (7) constructive fraud, and (8) negligence.  Andrew sought to have certain transactions voided, and the trust reimbursed for funds used to inappropriately benefit Rosalind and others.  He also sought damages and for Rosalind to be removed from her role of trustee.

On August 29, 2024, the circuit court entered an order removing Rosalind from her role as trustee and appointing a successor trustee.  The circuit court found that Rosalind benefited inappropriately from trust assets and used them to pay for housing, an automobile, and other expenses.  The court found that the terms of the trust "clearly state[d] the manner in which the Trust [was] to be administered," and determined Rosalind "failed to comply with those terms."  Rosalind and the Withers Collection, Inc., filed a motion for reconsideration, and a motion to set aside the judgment as void for lack of subject matter jurisdiction.  A hearing on these matters was held on December 13, 2024.  The circuit court subsequently denied both motions.  Regarding the motion predicated on a lack of subject matter jurisdiction, the circuit court stated that jurisdiction was "transferred by interchange" from the chancery court to the circuit court.  Additionally, the court held "that [it] would otherwise independently have jurisdiction over declaratory judgments and injunctive relief."  Rosalind and the Withers Collection, Inc. filed this appeal.

## II. ISSUES PRESENTED

The appellant has presented the following issues on appeal, which we have reproduced verbatim:

1. Whether the Trial Court lacked subject matter jurisdiction to adjudicate trust administration matters when Tennessee Code Annotated § 35-15-203(a) grants exclusive jurisdiction over trust proceedings to chancery or probate courts.
2. Whether the Trial Court erred in failing to give preclusive effect to the 2012 Chancery Court judgment and settlement agreement that permanently enjoined plaintiff from challenging the trustee's authority and required court permission for any future related litigation.
3. Whether the Trial Court erred in granting equitable relief to a plaintiff who violated multiple prior court orders, including permanent injunctions against selling trust assets and requirements to obtain court permission before filing new claims.

For the following reasons, the judgment of the circuit court is vacated, and this case is remanded for entry of an order transferring it back to the chancery court.

---

[8] These other persons were listed as defendants in the proceedings below but are not parties to this appeal.

- 4 -

## III. DISCUSSION

To begin, we consider the appellants' claim that the circuit court lacked subject matter jurisdiction to adjudicate these claims because jurisdiction was exclusive to the chancery or probate courts as the claims concerned the administration of a trust. *See* Tenn. Code Ann. 35-15-203(1). "Subject matter jurisdiction refers to a court's authority to adjudicate a particular case or controversy and 'depends on the nature of the cause of action and the relief sought.'" *In re Baby*, 447 S.W.3d 807, 837 (Tenn. 2014) (quoting *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012)). For this reason, "subject matter jurisdiction is 'a threshold inquiry, which may be raised at any time in any court.'" *Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, 645 S.W.3d 160, 167 (Tenn. 2022) (quoting *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013)). "Subject matter jurisdiction confines judicial power to the boundaries drawn in constitutional and statutory provisions." *Turner v. Turner*, 473 S.W.3d 257, 270 (Tenn. 2015). Importantly, "[t]he parties cannot confer subject matter jurisdiction on a trial or appellate court by appearance, plea, consent, silence, or waiver." *In re Est. of Trigg*, 368 S.W.3d 483, 489 (Tenn. 2012). "Orders and judgments entered by courts without subject matter jurisdiction are void." *In re Conservatorship of Tapp*, No. W2020-00216-COA-R3-CV, 2021 WL 225684, at *2 (Tenn. Ct. App. Jan. 22, 2021) (citing *In re Est. of Trigg*, 368 S.W.3d at 489).

In order to determine whether a court has subject matter jurisdiction, we must "examine (1) the nature or gravamen of the cause of action, (2) the nature of the relief being sought, and (3) the constitutional or statutory provisions relied upon by the plaintiff." *In re Est. of Trigg*, 368 S.W.3d at 489 (citing *Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn. 2000); *Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn. 1994)). These are questions of law and are, therefore, reviewed *de novo* without a presumption of correctness. *Id.* Whether the circuit court had subject matter jurisdiction in this case appears to be dependent on the interpretation of a statute. This is also a question of law that we review "*de novo* without a presumption of correctness." *Id.* at 489-90.

The statute at issue is Tennessee Code Annotated section 35-15-203, which is a portion of the Tennessee Uniform Trust Code ("the TUTC"). This statute provides that:

[c]hancery courts and other courts of record having probate jurisdiction:

(1)  To the exclusion of all other courts, have concurrent jurisdiction over proceedings in this state brought by a trustee or beneficiary concerning the administration of a trust; and

(2)  Have concurrent jurisdiction with other courts of record in this state over other proceedings involving a trust.

Tenn. Code Ann. § 35-15-203. Andrew claims that the circuit court had "original jurisdiction" over this claim as the amended complaint sought "declaratory relief and injunctive relief." Similarly, the circuit court held that because the action was "styled as a declaratory judgment action with injunctive relief and damages" it "independently ha[d] jurisdiction over" the matter. Essentially, Andrew argues, and the circuit court held, that the relief sought and causes of action pled in this matter did not concern the administration of the trust and, therefore, the proceedings were not within the exclusive jurisdiction of the chancery or probate courts. We disagree.

To determine whether the statute restricts jurisdiction in these proceedings, we must determine what activities concern "the administration of a trust."[9] Tenn. Code Ann. § 35-15-203(1). While the phrase "administration of a trust" has not been specifically defined in the TUTC, we find certain restated comments are helpful in discerning the phrase's meaning. *See Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 259 (Tenn. 2017) (relying on the TUTC's restated comments while assessing whether the TUTC granted trustees the power to enter predispute arbitration agreements); *Davison v. Johnson*, No. M2024-00412-COA-R3-CV, 2024 WL 4579530, at *9 (Tenn. Ct. App. Oct. 25, 2024), *perm. app. denied* (Tenn. Mar. 13, 2025) (citing *LeTellier v. LeTellier*, 40 S.W.3d 490, 493, n.2 (Tenn. 2001)) (explaining that "[a]lthough official comments are not binding, they are very persuasive in interpreting the statute to which they apply, and we give them substantial deference"). The restated comment to Tennessee Code Annotated section 35-15-203 states that:

> [t]his section provides a means for distinguishing the jurisdiction of the court having primary jurisdiction for trust matters from other courts in this state that may on occasion resolve disputes concerning trusts. For an explanation of types of proceedings which may be brought concerning the administration of a trust, see the Section Comment to T.C.A. § 35-15-201.

Tenn. Code Ann. § 35-15-203, 2013 Restated Comments.

Turning to Tennessee Code Annotated section 35-15-201, it provides, "[a] judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights." Tenn. Code Ann. § 35-15-201(c). The official comments to this section of the TUTC further explain that:

> [o]ther than as specifically provided otherwise in the Tennessee Uniform Trust Code, this section does not limit the court's equity jurisdiction. Beyond

---

[9]This statute is not ambiguous. Accordingly, it is not necessary to delve into the legislative history or other such items to discern the legislature's intent. However, we may consult certain sources to determine a term's natural and ordinary meaning. *See Long v. Chattanooga Fire & Police Pension Fund*, No. E2022-01151-SC-R11-CV, 2025 WL 2902078, at *8 (Tenn. Oct. 13, 2025) (considering dictionary definitions when interpreting an unambiguous statute's text).

mentioning petitions for instructions and actions to declare rights, subsection (c) does not attempt to list the types of judicial proceedings involving trust administration that might be brought by a trustee or beneficiary.

Tenn. Code Ann. § 35-15-201, 2013 Restated Comments. The Tennessee Legislature did not deem it advisable to elaborate on the additional types of judicial proceedings which it believed would fall into the category of "involving trust administration." However, the Section Comments recognize that certain jurisdictions have endeavored such an undertaking:

> [a]ccording to ULC--NCCUSL, such an effort is made in *California Probate Code § 17200*. Further according to ULC--NCCUSL, excluding matters not germane to the Uniform Trust Code, the California statute lists the following as items relating to the 'internal affairs' of a trust: determining questions of construction; determining the existence or nonexistence of any immunity, power, privilege, duty, or right; determining the validity of a trust provision; ascertaining beneficiaries and determining to whom property will pass upon final or partial termination of the trust; settling accounts and passing upon the acts of a trustee, including the exercise of discretionary powers (such jurisdiction being limited by T.C.A. § 35-15-814); instructing the trustee; compelling the trustee to report information about the trust or account to the beneficiary; granting powers to the trustee; fixing or allowing payment of the trustee's compensation or reviewing the reasonableness of the compensation; appointing or removing a trustee; accepting the resignation of a trustee; compelling redress of a breach of trust by any available remedy; approving or directing the modification or termination of a trust; approving or directing the combination or division of trusts; and authorizing or directing transfer of a trust or trust property to or from another jurisdiction. In light of this paragraph being other law as such is defined in the comments to T.C.A. § 35-15-101, such is not controlling to the extent it is in conflict with the Tennessee Uniform Trust Code, the Tennessee trust statutes or Tennessee law in general.

*Id*. As our legislature has not adopted this list, it is not controlling law. However, it is illustrative of the broad scope of actions that inherently implicate the administration of a trust and therefore are the "types of judicial proceedings involving trust administration that might be brought by a trustee or beneficiary." *Id.*

Similarly, the language of the statute envisions a broad scope of proceedings that involve the administration of a trust. The statute's use of the word "concerning" expands its scope beyond merely the acts of administering a trust to include those acts related to and dependent upon its administration. This restricts subject matter jurisdiction to chancery and probate courts in many instances because many proceedings involving a trust

will inherently implicate or involve its administration in some capacity. Many proceedings involving a trust require an assessment of the actions of a trustee or interpretation of its terms and require courts to consider either how the trust has been administered in the past or how it will be administered in the future. *See* Tenn. Code Ann. § 35-15-203(1).

Having determined that the phrase "concerning the administration of a trust" is broad in scope, we now consider the nature of the cause of action, the remedies sought, and the statutory provisions relied upon by Andrew to determine whether this cause of action concerned the administration of the trust. *In re Est. of Trigg*, 368 S.W.3d at 489. Each of these considerations demonstrates that this lawsuit concerned the administration of the trust. First, the causes of action are each predicated on Rosalind's actions as the trustee. The amended complaint points specifically to Rosalind's duty "to administer the Trust in good faith, [and] to administer the Trust in accordance with the terms and purposes of the trust and the interests of the Trust beneficiaries" and claims that she breached this duty. Additionally, the amended complaint claims that Rosalind "failed to keep [Andrew] reasonably informed about the administration of the trust[.]" These allegations required the court to assess Rosalind's administration of the trust and to determine whether her actions conflicted with her responsibilities or resulted in a breach of the fiduciary duties she owed to the beneficiaries. *See* Tenn. Code Ann. § 35-15-201, 2013 Restated Comments. Notably, Tennessee Code Annotated section 35-15-201(c) also refers to "an action to declare rights" specifically as a matter "involving the trust's administration." Therefore, the circuit court's determination that the style of the action indicated it did not concern the administration of the trust conflicted with the terms of the TUTC. Clearly, the causes of action raised demonstrate that Andrew's claims concern the administration of the trust.

Likewise, the relief sought involves the administration of the trust. The amended complaint requested that all transactions beneficial to Rosalind be voided and the value of those transactions be repaid to the trust. Additionally, Andrew sought a full accounting and/or audit of the trust. Lastly, the amended complaint sought that Rosalind be "permanently remove[d]" from her role as trustee "based on her breach of fiduciary duty, breach of trust, conversion, and conflict of interest." Each of these requests inherently concerns the administration of the trust as they involve the decisions of the trustee in entering certain transactions, a full accounting and audit of those actions, money to be placed in the trust that has already been spent, and removal of the trustee. These remedies certainly concern the administration of the trust and are contemplated within the TUTC's relevant restated comments. *See* Tenn. Code Ann. § 35-15-201, 2013 Restated Comments. Additionally, the statute that the circuit court relied upon when granting Andrew relief explicitly implicates the administration of the trust. The circuit court cited Tennessee Code Annotated section 35-15-802, which provides that, "[a] trustee shall *administer* the trust solely in the interests of the beneficiaries as the beneficiaries' interests are defined under the terms of the trust." Tenn. Code Ann. § 35-15-802(a) (emphasis added). The statute, by its terms, required the court to assess Rosalind's administration of the trust to determine

whether she breached a fiduciary duty of loyalty she owed to the other beneficiaries.

Having considered the nature of the cause of action, the remedies sought, and the statutory provisions relied upon as the basis for relief, we hold that Andrew's complaint concerned the administration of the trust. *See In re Estate of Trigg*, 368 S.W.3d at 489. Any analysis of these causes of action would require a review of Rosalind's acts as trustee, the records of the trust, and interpretation of the trust document itself to determine whether Rosalind's decisions aligned with its terms or otherwise breached any of her fiduciary duties. Therefore, we hold that these proceedings were within the exclusive jurisdiction of the chancery courts and probate courts of Shelby County. *See* Tenn. Code Ann. § 35-15-203(1).

However, Andrew also argues that the circuit court had subject matter jurisdiction because the court sat by interchange and, therefore, retained the chancery court's jurisdiction over the case. He points to the order transferring the case from the chancery court to the circuit court, which states that such transfer was to be done "[f]ollowing appropriate procedures established in the 30th Judicial District for Shelby County[.]" The circuit court also held "that Chancery Court jurisdiction was indeed transferred by interchange to the Circuit Court for this matter."

To determine whether the chancery and circuit courts undertook the proper process to have Judge Hurd sit by interchange, we must look to the procedures set forth for a judge who determines that he or she has a conflict, must recuse from a case, and seeks the appointment of another judge to sit by interchange. As this Court has previously explained:

> begin[ning] with Rule 10B, the Tennessee Supreme Court Rule governing recusal. Section 1.04 of that rule provides that
>
> 'A judge who recuses himself or herself, whether on the judge's own initiative or on motion of a party, shall not participate in selecting his or her successor, absent the agreement of all parties. With the agreement of all parties to the case, the judge may seek an interchange in accordance with Tenn. Sup. Ct. R. 11, § VII(c)(1). Otherwise, the presiding judge of the court shall effect an interchange in accordance with Tenn. Sup. Ct. R. 11, § VII(c)(2) and/or (3) in sequential order.'
>
> Tennessee Supreme Court Rule 11, section VII(c)(2) in turn provides that the recusing judge 'shall apply to the presiding judge or, if the applying judge is the presiding judge, the presiding judge pro tempore of the judicial district to effect an interchange with a judge of that judicial district in accordance with Tenn. Code Ann. § 16-2-509(c).' *See also* Tenn. Code Ann. § 16-2-509(c) (giving the presiding judge power to assign cases). Jurisdictional issues that arise in the interchange scenario are governed by two statutes. First,

- 9 -

Tennessee Code Annotated section 16-2-502 provides as follows:

'Each trial court judge shall continue to be officially known and designated as either a chancellor, circuit court judge, criminal court judge, or law and equity court judge, depending upon the position to which the chancellor or judge was elected or appointed prior to June 1, 1984. Any judge or chancellor may exercise by interchange, appointment, or designation the jurisdiction of any trial court other than that to which the judge or chancellor was elected or appointed.'

Second, Tennessee Code Annotated section 17-2-206 provides that '[i]n all such cases, the judge or chancellor holding court in the circuit or division of another, shall have the same power and jurisdiction as the judge or chancellor in whose place the judge or chancellor is acting.'

*In re Est. of Ellis*, No. W2019-02121-COA-R3-CV, 2020 WL 7334392, at *5 (Tenn. Ct. App. Dec. 14, 2020).[10] "These statutes, when read together, clearly indicate that an interchange is effected by a judge sitting in a court to which he or she was not elected or appointed, not the transfer of a case from one court to another." *Id.* at *7. Accordingly, as we determined that this cause of action was within the exclusive jurisdiction of the chancery and probate courts, the proper method for Judge Hurd to hear this case in place of Chancellor Kyle would have been for her to sit by interchange. Doing so would have permitted her to sit in the capacity of a chancellor and to retain the chancery court's subject matter jurisdiction over the proceedings. *See* Tenn. Code Ann. § 17-2-206.

However, the order entered by Chancellor Kyle did not designate Judge Hurd to sit by interchange, but rather states, "this case is hereby *transferred* to Division 5 of the Circuit Court of Shelby County." (emphasis added). While Judge Hurd determined that certain language in the order stating the transfer was made according to "appropriate procedures" demonstrated she sat by interchange, the record does not support this determination. Several factors demonstrate that this case was transferred rather than heard by Judge Hurd sitting by interchange. First, the case's docket number was changed to reflect that the case was pending in circuit court, and the case caption present on orders and filings reflects that it was heard in circuit court. Likewise, the orders entered by Judge Hurd do not indicate that she was sitting by interchange, make no reference to her acting in the capacity of a chancellor, and were entered by the circuit court clerk. Additionally, the appellate record was compiled by the circuit court clerk. These are many of the same qualities that led us to determine that the circuit court judge was not sitting by interchange for the probate court

---

[10] It appears that Chancellor Kyle may not have followed the process set forth in Tennessee Supreme Court Rule 10B when recusing from the case as he entered the order transferring the case to Judge Hurd. However, no issue has been raised with Chancellor Kyle's compliance with Tennessee Supreme Court Rule 10B on appeal and each of the three chancellors for the 30th judicial district signed the order of recusal.

- 10 -

in *In re Estate of Ellis*. 2020 WL 7334392, at *6. There is simply nothing in the record demonstrating that Judge Hurd sat by interchange in this matter. Rather, the case was transferred to circuit court, which did not have subject matter jurisdiction.

We are cognizant of the long and tenuous procedural history of this case, but because the circuit court did not have subject matter jurisdiction, its orders are void and must be vacated without consideration of the other issues raised on appeal. *Culbertson v. Culbertson*, 455 S.W.3d 107, 126 (Tenn. Ct. App. 2014). However, while our procedure is typically to vacate the judgment of the trial court and dismiss the action, because this action was originally filed in the proper court and removed through no apparent fault of any party, transfer of the case back to the chancery court is appropriate. *See In re Est. of Ellis*, 2020 WL 7334392, at *8 (citing Tenn. Code Ann. § 16-1-116). Accordingly, we vacate all orders entered by the circuit court throughout these proceedings and remand with directions for this case to be transferred back to the chancery court. The Presiding Judge is directed to enter an order designating a sitting chancellor to hear the case or, if necessary, designating another judge to sit by interchange.[11]

## IV. CONCLUSION

For the foregoing reasons, the ruling of the circuit court is vacated, and this case is remanded for entry of an order transferring it back to the chancery court. Costs of this appeal are taxed equally to the appellants, Withers Collection, Inc., and Rosalind Withers, individually and in her capacities as the trustee of the Withers Family Trust, the Withers Family Representative, and the Executive Director of Withers Collection Inc., and to appellee, Andrew J. Withers.

s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE

---

[11] Nothing in this opinion should be construed as prohibiting Judge Hurd from being designated to hear this case by interchange through proper procedures. Nothing in the record indicates that Judge Hurd acted improperly or in bad faith throughout these proceedings.